UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LARRY D. HARDEN,

      Plaintiff,

v.                                CASE NO. 8:15-cv-755-T-30JBT

CAROLYN W. COLVIN,
Acting Commissioner of the
Social Security Administration,

      Defendant.

_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative

decision denying his application for a Period of Disability and Disability Insurance

Benefits.   A hearing was held before the assigned Administrative Law Judge

("ALJ") on September 24, 2013, at which Plaintiff was represented by an attorney.

(Tr. 30–61.)  In a decision dated December 4, 2013, the ALJ found that Plaintiff

had not been under a disability from February 1, 2012, the alleged disability onset

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2).  "A party may respond to another party's objections within 14 days after being served with a copy."  *Id.*  A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made.  *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

date, through the date of decision.  (Tr. 12–25.)

Plaintiff has exhausted his available administrative remedies and the case is properly before the Court.  The undersigned has reviewed the record, the briefs, and the applicable law.  For the reasons stated herein, the undersigned respectfully **RECOMMENDS** that the Commissioner's decision be **AFFIRMED**.

## I.    Issues on Appeal

Plaintiff raises two issues on appeal.  First, he argues that the "ALJ [f]ailed to [p]roperly [w]eigh the [m]edical [e]vidence."  (Doc. 13 at 12.)  Specifically, Plaintiff takes issue with the ALJ's analysis of the opinions of treating psychiatrist Dr. Lia Nardone and treating primary care physician Dr. Bernard Khaw.  (*Id.* at 12–16.)  Second, Plaintiff argues that the ALJ "[f]ailed to [p]roperly [e]valuate [his] [c]redibility."  (*Id.* at 16.)

## II.    Standard of Review

As the Eleventh Circuit has stated:

> In Social Security appeals, we must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards.  Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.  We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations and quotations omitted).  "With respect to the Commissioner's legal conclusions, however, our review is *de novo.*"  *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th

Cir. 2002).

## III.   The ALJ's Decision

At step two of the sequential evaluation process, the ALJ found that Plaintiff had the severe impairments of "fibromyalgia, irritable bowel syndrome, migraines, sleep apnea, insomnia, major depressive disorder, anxiety, mood disorder, and social phobia." (Tr. 14.)[2] After determining that Plaintiff's impairments did not meet or equal a listing, the ALJ found that Plaintiff had the residual functional capacity ("RFC"):

> to perform light work as defined in 20 CFR 404.1567(b) except lift 20 pounds occasionally and 10 pounds frequently; stand/walk 6 hours per day; sit 6 hours per day; no climbing of ladders, ropes, and scaffolds; no more than occasionally climbing [sic] of ramps and stairs, stooping, kneeling, crouching, crawling, and balancing; no more than frequent reaching, handling, fingering, and feeling; must avoid hazardous machinery and heights; can perform simple and detailed tasks, but not complex tasks; can handle ordinary and routine changes in work settings and duties; can have occasional interaction with the public, co-workers, and supervisors; and can maintain attention/concentration for two hours and then needs a 10 minutes [sic] break.

(Tr. 16–17.)

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (Tr. 24.)  However, at step five, the ALJ found that there were jobs

---

[2] The sequential evaluation process is described in the ALJ's decision. (Tr. 13–14.)

that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 24–25.)  Therefore, Plaintiff was not disabled. (Tr. 25.)

## IV.    Analysis

### A.    Medical Evidence

#### 1.    Treating Physician Standard

To discount the opinions of a treating doctor, the ALJ has to provide "good cause." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause to discount a treating doctor's opinion exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* at 1240–41.

#### 2.    Dr. Nardone

Regarding Dr. Nardone, the ALJ first reviewed her treating records:

> In April of 2013, the claimant was seen in the Mental Health Clinic (MHC) at which time Dr. Nardone noted reviewing the PC-BH [Primary Care-Behavioral Health] evaluation from 4/16/13. The claimant reported increased depressions [sic], anergia, anhedonia, and decreased concentration for the past year. He stated that he had done poorly in school due to inability to concentrate and decreased motivation. He reported early and middle insomnia and feelings of worthlessness due to inability to work and bring money for his family. He denied any suicidal thoughts, plan or intent. He also reported worsening difficulty with anxiety and social settings, especially crowds, and in stores. The claimant noted some improvement in his overall mood since initiating Venlafaxine. He was currently a full time photography student in college. Mental status exam revealed his affect was dysthymic with some brightening.

> Thought process was organized, coherent, and circumstantial; and thought content revealed no hallucinations or internal stimuli.  He was alert and oriented times three, and there was no evidence of cognitive difficulties.  Dr. Nardone's diagnosis was major depression, recurrent, moderate to severe; social anxiety; cannabis dependence, in early remission; fibromyalgia and migraine; and a GAF of 55 (Exhibit 8F).
>
> . . .
>
> During follow-up with Dr. Nardone in May of 2013, it was noted that the claimant presented early as he had plans to go to NE [Nebraska] to help care for his grandfather. He reported improvement in mood overall and being motivated.   He also stated that his anxiety was less intense.   Upon examination, his affect was generally euthymic.  Thought process was organized and coherent, and thought content revealed no hallucinations or internal stimuli.  He denied suicidal/homicidal ideation.  He was alert and oriented times three with no gross evidence of cognitive  difficulties.    Diagnoses  were  unchanged (Exhibit 8F).

(Tr. 20.)

The   ALJ   then   reviewed   Dr.   Nardone's   response   to   a Psychiatric/Psychological Impairment Questionnaire (Tr. 851–58).  (Tr. 22.)  The ALJ noted in part that Dr. Nardone opined that Plaintiff had a number of marked limitations:

> Dr. Nardone opined that the claimant had marked limitations in his ability to remember locations and work-like procedures; understand, remember, and carry out detailed   instructions;   maintain   attention   and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; make simple work-related decision[s]; complete a normal workweek without interruptions from psychologically based symptoms and

perform at a consistent pace without an unreasonable number and lengths of rest periods; interact appropriately with the general public; ask simple questions or request assistance; accept instructions and respond appropriately to criticisms from supervisors; travel to unfamiliar places or use public transportation; set realistic goals; or make plans independently.

(Tr. 22.)

The ALJ then stated the weight he was giving Dr. Nardone's opinions:

As for the opinion evidence, the Administrative Law Judge has considered the opinion of Dr. Nardone and gives it little weight (Exhibit 12F). The undersigned notes that Dr. Nardone has been the claimant's treating psychiatrist since April of 2013; however, her own treatment records do not support the opined severity and it is inconsistent with the evidence of record when considered in its entirety (Exhibit 8F). Furthermore, the evidence of record shows that the claimant did not receive any treatment from a mental health professional after 2011 until April of 2013.

(Tr. 22.)

The undersigned recommends that the ALJ articulated good cause, supported by substantial evidence, to discount the opinions of Dr. Nardone. First, as noted by the ALJ, Plaintiff did not receive any treatment from a mental health professional from 2011 until April 2013. It was proper for the ALJ to consider this lack of treatment as an indication that Plaintiff's claimed psychological impairments for the period at issue were not as debilitating as Plaintiff claimed or as Dr. Nardone indicated. *See Carnley v. Astrue*, Case No. 5:07cv155/RS/EMT, 2008 WL 3896019, at *10 (N.D. Fla. Aug. 21, 2008) ("[A] claimant's failure to seek treatment is a proper factor for the ALJ to consider.") (citing *Watson v. Heckler*, 738 F.2d

1169, 1173 (11th Cir.1984)).  Given that the period of disability at issue was from February 1, 2012 through December 4, 2013, Plaintiff had no treatment from a mental health professional for the majority of this time, and did not begin such treatment until approximately eight months before the period ended.

Moreover, although the ALJ could have better explained exactly how Dr. Nardone's opinions were inconsistent with the entire record and unsupported by her treatment records, the undersigned recommends that the ALJ's decision is sufficiently clear to ensure meaningful review.  *See Winschel*, 631 F.3d at 1179 (an ALJ must "state with at least some measure of clarity the grounds for his decision").  Regarding Dr. Nardone's treatment records, the ALJ had previously described them in detail, and noted, for example, that they indicated that Plaintiff's thought process was "organized, coherent, and circumstantial," that Plaintiff "was alert and oriented times three, and there was no evidence of cognitive difficulties," and that Plaintiff's Global Assessment of Functioning ("GAF") score was 55, indicating moderate symptoms.  (Tr. 20.)  Further, on the visit with Dr. Nardone in May 2013, Plaintiff reported that he had plans to go to Nebraska to help care for his grandfather, and that his mood and motivation had improved.  (Tr. 20.)  He reported that his anxiety was less intense.  (Tr. 20.)  His affect "was generally euthymic," his thought process was "organized and coherent," and he was "alert and oriented times three with no gross evidence of cognitive difficulties." (Tr. 20.)

In comparing Dr. Nardone's treatment records with her opinions, the undersigned recommends that it was reasonable for the ALJ to conclude that such

treatment records did not support the severe limitations indicated.  Thus, this reason given by the ALJ to discount the opinions of Dr. Nardone is supported by substantial evidence.

In addition, although the ALJ did not specify how Dr. Nardone's opinions were "inconsistent with the evidence of record when considered in its entirety," he did discuss his view of the record evidence in explaining why his RFC assessment was supported.  (Tr. 23–24.)  In short, the ALJ relied on Plaintiff's described daily activities, the type and frequency of treatment, Plaintiff's "inconsistent and unpersuasive" description of his symptoms and limitations, and the opinions from two non-treating physicians and other State agency doctors.  As discussed further herein, the undersigned recommends that all of these reasons are supported by substantial evidence.  (Tr. 23–24.)  Therefore, the undersigned recommends that the ALJ articulated sufficient good cause for giving the opinions of Dr. Nardone "little weight."  (Tr. 22.)

Moreover, even if the ALJ should have been more explicit in specifying how Dr. Nardone's opinions were inconsistent with her treatment records and the overall evidence, the undersigned recommends that any error is harmless.  *See Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 903 (11th Cir. 2011) (applying the harmless error doctrine to social security cases).  As noted, substantial evidence supports the ALJ's view, the decision is adequate for meaningful review, and no purpose would be served by a remand.  *See Harland v. Astrue*, Case No. 3:07-CV-118(CDL), 2008 WL 5137802, at *6 (M.D. Ga. Dec. 5, 2008) ("As the

8

Eleventh Circuit has held, a remand to have the ALJ perfect the record would serve no practical purpose where it would not alter the ALJ's findings, and would be a waste of judicial and administrative resources.") (citing *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir.1997)).

### 3.   Dr. Khaw

Regarding Dr. Khaw, the ALJ reviewed his treating records:

> During follow-up with his primary care physician in March of 2012, the claimant had complaints of chronic pain. He was on Lyrica, but it was making him feel spacy, lightheaded, and unable to concentrate. He was also taking Flexeril and Firanol for headaches. Examination was normal. Dr. Khaw advised the claimant to do aerobic exercise as much as possible using the upper and lower body. He was also advised to eat [a] low salt, low cholesterol diet; stop smoking; and decrease alcohol usage. Dr. Khaw also noted that the claimant had been taking care of his grandfather who had Alzheimers (Exhibit 7F).
>
> . . .
>
> There are no medical records from the VA Clinic after March of 2012 until April of 2013 when the claimant was seen in the primary care clinic for complaints of migraines 3-4 times a week with severe episodes three days out of seven (took Imitrex), and GERD and nausea (stopped drinking Mountain Dew). It was noted that the claimant was walking, doing yoga, and physical therapy. Examination was normal except for tenderness in the bilateral cervical spine, shoulder, hip, and lower back. Dr. Khaw again advised the claimant to aerobic exercise as much as possible [sic] using the upper and lower body (Exhibit 8F).

(Tr. 18–19.)

9

The ALJ also reviewed Dr. Khaw's response to a Multiple Impairment Questionnaire (Tr. 842–49):

> In September of 2012, Dr. Khaw completed a Multiple Impairment Questionnaire at the request of the claimant's attorney. He stated that he first treated the claimant on 9/1/10 and last examined that claimant on 3/14/12. The claimant's diagnoses were migraine headaches, GERD, fibromyalgia-chronic pain, and mild sleep apnea. He stated that the claimant's prognosis was good. The claimant's primary symptoms were noted as pain throughout the body (arms, shoulders, neck, back, legs, and head), nausea, diarrhea, migraine pain, and exhaustion. Dr. Khaw stated that the claimant suffered from pain daily, which was precipitated by stress, sitting, and standing. He opined that the claimant could sit 4 hours and stand/walk 4 hours in an 8-hour day, could not sit or stand/walk continuously, and must frequently get up and move around every 30 minutes. Dr. Khaw opined that the claimant could lift/carry 5-20 pounds occasionally and 0-5 pounds frequently. He opined that the claimant had a minimal limitation in regards to grasping, turning, and twisting objects; minimal limitations in regards to using fingers/hands for fine manipulations; and moderate limitations in regards to using arms for reaching. Dr. Khaw stated that the claimant's symptoms would likely increase if he were placed in a competitive work environment. He stated that the claimant could not do a full time competitive job on a sustained basis that required him to keep his neck in a constant position. He stated that stress, depression, or any abrupt emotional change could trigger and/or intensify the claimant's pain levels; however, he was capable of low stress work. Dr. Khaw stated that the claimant would need to take 1-5 breaks daily depending on pain episodes, would be absent from work more than three times a month as a result of his impairments or treatment, and needed a job that permitted ready access to a restroom. Dr. Khaw opined that the claimant needed to avoid noise, fumes, gases, temperature extremes, dust, and heights; and could do no pushing, pulling, kneeling, bending, or stooping (Exhibit 11F).

(Tr. 18–19.)

Regarding Dr. Khaw's opinions, the ALJ stated:

> The Administrative Law Judge has considered the opinions of Dr. Khaw and gives it little weight (Exhibit 11F).  The undersigned notes that Dr. Khaw has been treating the claimant since at least March of 2012; however, there are no treatment records from Dr. Khaw after March of 2012 until April of 2013 and no treatment records after April of 2013.  Furthermore, Dr. Khaw's opinion is not supported by his own treatment records (Exhibits 7F and 8F), and it is inconsistent with the claimant's reported activities (Exhibit 7E; 7F/3; and 8F/31, 42, 45, 49, 53, and 59).

(Tr. 23.)

Similar to the ALJ's discounting of Dr. Nardone's opinions, the undersigned recommends that the ALJ articulated good cause, supported by substantial evidence, to discount the opinions of Dr. Khaw.  Although the ALJ could have better identified exactly how Dr. Khaw's opinions were inconsistent with his treatment notes and with Plaintiff's reported activities, the ALJ's decision is sufficiently clear to ensure meaningful review.  See Winschel, 631 F.3d at 1179.

First, it was proper for the ALJ to consider that Dr. Khaw did not even see Plaintiff from March 2012 through April 2013, which encompasses the majority of the time period at issue.  See Weekley v. Comm'r of Soc. Sec., 486 F. App'x 806, 808 (11th Cir. 2012) ("When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the: (1) length of the treatment relationship and the frequency of examination . . .").

It was also reasonable for the ALJ to conclude that Dr. Khaw's opinions, which gave Plaintiff significant restrictions, were inconsistent with his treatment records. For example, as the ALJ noted, Plaintiff's physical examination in March 2012 was normal, and his examination in April 2013 was normal except for tenderness in the areas indicated. (Tr. 18–19.) Both times, Dr. Khaw advised Plaintiff to do as much aerobic exercise as possible using his upper and lower body. (Tr. 18–19.) On the first visit, Dr. Khaw noted that Plaintiff had been taking care of his grandfather who had Alzheimer's. (Tr. 18–19.) On the second visit, Dr. Khaw noted that Plaintiff was walking, doing yoga, and doing physical therapy. (Tr. 18–19.) Thus, substantial evidence supports the ALJ's view that Dr. Khaw's opined restrictions were inconsistent with his treatment records.

Similarly, substantial evidence supports the ALJ's view that Dr. Khaw's restrictions were inconsistent with Plaintiff's reported activities. As noted by the ALJ, Plaintiff reported the following activities:

> At the hearing, the claimant reported helping his mom very little around the house; however, he stated that he assisted her with his grandfather when needed (help get him out of bed, walk him from inside chair to outside chair, and just keep an eye on him). Furthermore, at one point or another in the record, the claimant has reported the following activities: taking care of personal needs, cooking simple meals, doing laundry, dusting, sweeping, taking daily walks, driving occasionally, shopping, watching television, reading, playing video games, taking care of his grandfather who had Alzheimer [sic], doing yoga, taking college classes/going to school for photography, and traveling to NE [Nebraska] to help care for his grandfather (Exhibits 7E; 7F/3; and 8F/31, 42, 45, 49, 53, and 59).

(Tr. 23.)

Dr. Khaw opined, for example, that Plaintiff would have to take daily unscheduled breaks to rest at unpredictable intervals during the work day, and would then have to rest between one to five days depending on his level of pain before returning to work.  (Tr. 847.)  This restriction could reasonably be viewed as inconsistent with the daily activities Plaintiff described, including taking daily walks, taking care of his grandfather (and traveling to Nebraska to do so), and going to school.  Thus, substantial evidence supports the ALJ's view that Dr. Khaw's opinion was inconsistent with Plaintiff's reported activities.

Moreover, even if the ALJ should have been more explicit in specifying how Dr. Khaw's opinions were inconsistent with his treatment records and with Plaintiff's reported activities, the undersigned recommends that any error is harmless.  *See Burgin*, 420 F. App'x at 903.  As noted, substantial evidence supports the ALJ's view, the decision is adequate for meaningful review, and no purpose would be served by a remand.  *See Harland*, 2008 WL 5137802, at *6.

### 4.    Plaintiff's Arguments

In addition to arguing that the ALJ's decision is not specific enough, which the undersigned has addressed, Plaintiff argues that the ALJ erred in relying on non-examining doctors instead of treating physicians.  (Doc. 13 at 14.)  "Generally, the opinions of examining or treating physicians are given more weight than non-examining, or non-treating physicians."  *Wainwright v. Comm'r of Soc. Sec. Admin.*, Case No. 06-15638, 2007 WL 708971, at *2 (11th Cir. Mar. 9, 2007).  *See*

*also Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); 20 C.F.R. §

404.1527(c)(1).  However, "the ALJ may reject any medical opinion if the evidence

supports a contrary finding."  *Wainwright*, 2007 WL 708971, at *2.  Furthermore,

"[t]he ALJ is required to consider the opinions of non-examining state agency

medical and psychological consultants because they are highly qualified

physicians and psychologists, who are also experts in Social Security disability

evaluation." *Milner v. Barnhart*, 275 F. App'x 947, 948 (11th Cir. 2008).  Therefore,

the undersigned recommends that, having validly discounted the aforementioned

treating doctors' opinions, the ALJ could reasonably give "great weight" to the

opinions of Drs. James Brooks and Jose Rabelo.  (Tr. 21–24.)  *See Flowers v.

Comm'r of Soc. Sec.*, 441 F. App'x 735, 743 (11th Cir. 2011) ("[B]ecause the ALJ

articulated good cause for discounting the opinions of [Plaintiff's] treating and

examining doctors and because the consulting doctor's opinion was consistent

with the medical record, . . . the ALJ did not err in giving more weight to the

consulting doctor's opinion.").

    Furthermore, to the extent Plaintiff argues that the ALJ erred in failing to

address each specific factor listed in 20 C.F.R. § 404.1527(c), the ALJ was not

required to do so.  *See Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833

(11th Cir. 2011).  *See also Davis-Augustin v. Colvin*, Case No. 3:14CV113/EMT,

2015 WL 5042752, at *11 (N.D. Fla. Aug. 26, 2015) ("The ALJ need not separately

discuss every factor that she considers in according weight to the treating source's

opinion, provided she give[s] good reasons.") (internal quotation marks omitted).

14

Therefore, the undersigned recommends that substantial evidence supports the ALJ's weighing of the medical evidence.

### B.    Plaintiff's Credibility

Plaintiff also argues that the ALJ "[f]ailed to [p]roperly [e]valuate [his] [c]redibility." (Doc. 13 at 16.)  "If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so." *Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995).  "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Id.* at 1562.

The ALJ stated that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not fully supported by the record. . . .  The evidence of record documents symptoms and limitations; however, they do not prevent him from performing a restricted range of light work." (Tr. 18.) As previously noted, later in the decision, the ALJ supported his RFC assessment by relying on Plaintiff's described daily activities, the significant gaps in medical treatment, Plaintiff's inconsistent and unpersuasive presentation, and the opinions of the non-examining physicians. (Tr. 23–24.)  The undersigned recommends that these reasons are explicit and adequate to discount Plaintiff's credibility.

Plaintiff takes issue with each of the reasons articulated by the ALJ. Regarding Plaintiff's daily activities, he argues: "[I]t remains unclear how the ability to perform such minimal activities primarily at home and as needed can be contrary to Plaintiff's testimony on how he would be limited if in a work environment." (Doc.

13 at 17.)  However, as the ALJ noted, at the hearing Plaintiff testified to extensive limitations.  (Tr. 17–18.)  For example, "[h]e stated that he had difficulty moving his arms, sitting for longer than 30 minutes, standing for longer than 15 minutes, walking more than 3-5 minutes, lifting more than 15 pounds, and climbing stairs. The claimant testified that he suffered from headaches 3-5 times [sic] week with the shortest one lasting four hours and the longest one being all day."  (Tr. 17.) The ALJ could reasonably view these asserted limitations as inconsistent with other reports by Plaintiff that he took care of his grandfather who had Alzheimer's, he traveled to Nebraska to help care for his grandfather, he took daily walks, he did laundry, dusted, and swept, and he did yoga.  (Tr. 23.)

Regarding his lengthy gaps in treatment, Plaintiff argues that the ALJ should have inquired about those gaps, as part of his duty to develop the record, and not simply assumed that the gaps were due to a lack of severity of symptoms.  (Doc. 13 at 17–18.)  For support, he relies on SSR 96–7p, which provides in pertinent part that "the adjudicator must not draw any inferences . . . from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits . . . ."  However, Plaintiff provides no explanation for these gaps in treatment, nor does he point to any other information in the record that would explain them.  Thus, SSR 96–7p does not support Plaintiff's argument.  Furthermore, this case is distinguishable from *Henry v. Commissioner*, 802 F.3d 1264, 1270 (11th Cir. 2015), in which the Eleventh Circuit

16

recently held that the ALJ did not properly develop the record regarding a claimant's explanation that he could not afford medical treatment.  There is no such issue in this case.  Plaintiff is a veteran and was receiving care through the Veterans Administration.  (Tr. 17.)  He provided no explanation for the gaps in treatment, and the record suggested none.  Therefore, the undersigned recommends that the ALJ appropriately considered this factor in discounting Plaintiff's credibility.[3]

Third, Plaintiff argues that the ALJ erred in relying on his observations of Plaintiff at the hearing.  (Doc. 13 at 18–19.)  However, the ALJ recognized: "While the hearing was short-lived and cannot be considered a conclusive indicator of the claimant's overall level of pain on a day-to-day basis, the apparent lack of discomfort during the hearing is given some slight weight in reaching the conclusion regarding the credibility of the claimant's allegations and the claimant's residual functional capacity."  (Tr. 23–24.)  As the ALJ stated, his observation of Plaintiff was only a slight factor, coupled with many other factors, in discounting Plaintiff's credibility.  Thus, the undersigned recommends that no error occurred. *See Macia v. Bowen*, 829 F.2d 1009, 1011 (11th Cir. 1987) ("The ALJ is not prohibited 'from considering the claimant's appearance and demeanor during the

---

[3] In addition, it was reasonable for the ALJ to consider that Plaintiff had received no specialized treatment for his fibromyalgia, that his treatment had been "essentially routine and/or conservative in nature," and that his medications had been relatively effective.  (Tr. 23.)

hearing.'") (quoting *Norris v. Heckler*, 760 F.2d 1154, 1158 (11th Cir. 1985) ("[W]e did not intend to prohibit an ALJ from considering the claimant's appearance and demeanor during the hearing.  Rather, an ALJ must not impose his observations in lieu of a consideration of the medical evidence presented.")).

Finally, as previously discussed, Plaintiff argues that the ALJ erred in relying on non-examining physicians.  However, for the reasons previously discussed, the undersigned recommends that the Court reject this argument as well.

### V.     Conclusion

The Court does not make independent factual determinations, re-weigh the evidence or substitute its decision for that of the ALJ.  Thus, the question is not whether the Court would have arrived at the same decision on *de novo* review; rather, the Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and are supported by substantial evidence.  Applying this standard of review, the undersigned respectfully recommends that the Commissioner's decision be affirmed.

Accordingly, it is respectfully **RECOMMENDED** that:

1.     The Commissioner's decision be **AFFIRMED**.

2.     The Clerk of Court be **DIRECTED** to enter judgment accordingly and close the file.

**DONE AND ENTERED** at Jacksonville, Florida, on January 26, 2016.

JOEL B. TOOMEY
United States Magistrate Judge

Copies to:

The Honorable James S. Moody, Jr.
Senior United States District Judge

Counsel of Record